**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-01688-CMA

ANDREW PAUL,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER VACATING AND REMANDING ALJ'S**
**DECISION DENYING SOCIAL SECURITY BENEFITS**

---

      This matter is before the Court on Plaintiff Andrew Paul's appeal of the Defendant's January 11, 2010 decision denying his claims for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83.  Jurisdiction is proper under 42 U.S.C. § 405(g).

## I.  BACKGROUND

      Plaintiff was born on March 15, 1964, and has at least a high school education. Prior to the accident at issue in this case, Plaintiff had worked as a bartender and in the construction industry as a "rod buster."  On July 3, 2006, Plaintiff was injured during the performance of his job as an ironworker.  Plaintiff asserts that he was lifting a caisson with a co-worker when he heard a popping noise in his back, which later caused him significant pain.  That pain was exacerbated, according to Plaintiff, during a November 2007 car accident.

Plaintiff applied for Disability Insurance Benefits (Title II) and Supplemental Security Income (Title XVI) on October 17, 2007, alleging disability beginning July 3, 2006.  After his applications were denied, Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on August 13, 2009.  (AR at 25-57.)[1] Plaintiff and a Vocational Expert ("VE") testified at the hearing.  (*See id.*)  Plaintiff was represented by counsel.  (*Id.*)

On January 11, 2010, the ALJ issued a decision, finding that Plaintiff was not disabled at any time from July 3, 2006, through the date of the decision.  (*Id.* at 20.) According to the standard five-step sequential evaluation process used in Social Security cases, the ALJ determined that:

1. Plaintiff has not engaged in substantial gainful activity after his alleged onset of disability [Step 1];

2. Plaintiff has the following severe impairment: degenerative disc disease of the lumbar spine [Step 2];

3. Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 [Step 3];

4. Plaintiff has the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR 404.1567(b)[2];

---

[1]  Citations to the Social Security Administrative Record, which is found at Doc. # 7, will be to "AR" followed by the relevant page number(s).

[2]  The ALJ specified that Plaintiff: "can stand/walk for 4-6 hours during an 8-hour workday, and can sit for 6 hours during the same time frame, but should have the opportunity to alternate between the positions as needed.  From a postural perspective, he should avoid climbing ladders, ropes, and scaffolds; and should limit stooping, crouching, kneeling, and crawling to less than occasional.  He can occasionally climb stairs and ramps.  The claimant should avoid concentrated exposure to vibration and extreme cold.  He can perform jobs at all skill levels."  (AR at 15.)

5. Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms . . . [but that Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]";

6. Plaintiff was unable to perform any past relevant work [Step 4]; and

7. Given Plaintiff's age, education, work experience, and RFC, jobs that Plaintiff can perform exist in significant numbers in the national economy [Step 5].

Thereafter, Plaintiff filed a request with the Appeals Council for review, which was denied on May 17, 2011.  (*Id.* at 1-5.)

On June 28, 2011, Plaintiff filed a Complaint, seeking judicial review of the denial of Social Security Benefits.  (Doc. # 1.)  The Social Security Administrative Record was filed with the Court on September 6, 2011.  (Doc. # 7.)  On December 1, 2011, Plaintiff filed his Opening Brief.  (Doc. # 13.)  Defendant, the Commissioner of Social Security, responded on February 2, 2012 (Doc. # 17), and Plaintiff replied on February 29, 2012 (Doc. # 20).

In this appeal, Plaintiff contends that the ALJ committed legal errors and that his decision was not supported by substantial evidence.  Specifically, Plaintiff argues that the ALJ erred by:

1. failing to consider all of Plaintiff's impairments;

2. not basing his RFC determination on substantial evidence;

3. failing to give controlling weight to the opinions of Plaintiff's treating doctors;

4. improperly determining that Plaintiff was not fully credible; and

5. relying on the VE's testimony, which was allegedly not supported by substantial evidence.

(*See* Doc. # 13.)

## II. <u>APPLICABLE LAW</u>

**A.     STANDARD OF REVIEW**

The record in this case is composed of the evidence that was considered by the ALJ, as well as by additional evidence Plaintiff submitted to the Appeals Council.[3]  The Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner – through the ALJ – applied the correct legal standards.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Id.* at 1052.  In reviewing the record, the Court does not reexamine the issues *de novo*, *Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported findings contrary to those that the ALJ made, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

---

[3]  For reasons discussed below, consideration of Plaintiff's additional evidence was unnecessary for the Court's determination.

**B.      EVALUATION OF DISABILITY**

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d).

An individual's eligibility for SSI payments each month is determined on the basis of the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a "disability" as defined in the Social Security Act. 42 U.S.C. § 1382.[4]

## III. ANALYSIS

In determining whether a claimant is disabled, the ALJ must engage in the following five-step inquiry: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling by meeting the requirements of a listing; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work, and (5) whether the claimant is capable of

---

[4]  Part 404 of the Code of Federal Regulations ("CFR") addresses claims for Disability Insurance Benefits under Title II of the Social Security Act.  That Part is paralleled by Part 416 of the CFR, which addresses claims for SSI pursuant to Title XVI of the Act. Accordingly, citations to the CFR need only be to one of these Parts: here, Part 404.

performing any work in the national economy.  20 CFR § 404.1520(a)(4).  The claimant

bears the burden of establishing a disability at Steps One through Four.  *See, e.g.*,

*Gonzales v. Astrue*, No. 11-cv-02344, 2012 WL 4356243, at *2 (D. Colo. Sept. 24,

2012) (unpublished).  If the claimant reaches Step Five, the burden then shifts to the

Commissioner to show that "the claimant is capable of performing work in the national

economy."  *Id.*

     Because the determination of whether a claimant is entitled to Social Security

Benefits proceeds according to this sequential analysis, the Court will address Plaintiff's

contentions in the order in which they would have occurred before the ALJ, as set forth

above, even though Plaintiff presents them in a different order in his Opening Brief.

**A.     THE ALJ'S CONSIDERATION OF PLAINTIFF'S IMPAIRMENTS**

     Plaintiff first contends that the ALJ should have, but did not, consider all of his

alleged impairments including, especially, his chronic pain syndrome, fibromyalgia,[5] and

depression.  (Doc. # 13 at 15-25.)  The Court discerns no reversible error in the ALJ's

analysis.

     At the outset, however, the Court is compelled to respond to Plaintiff's assertion

that the ALJ "refus[ed] to review the entire case record."  (*Id.* at 15.)  Plaintiff correctly

notes that, "[a]t the hearing, the ALJ advised the Plaintiff's attorney he was not aware a

FCE ['Functional Capacity Evaluation'] had been conducted on March 7, 2007[,] as it

---

     [5]  Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous
connective tissue components of muscles, tendons, ligaments, and other tissue."  *Moore
v. Barnhart*, 114 Fed. Appx. 983, 991 (10th Cir. 2004) (unpublished) (quotation marks
and citation omitted).  It is known for producing chronic pain.  *See, e.g., Patterson v.
Commissioner of Social Sec. Admin.*, No. 1:11-CV-208, 2012 WL 1028879, at *9 (N.D.
Ohio Mar. 26, 2012) (unpublished) (noting that pain is "the hallmark of fibromyalgia").

was contained in an exhibit with 141 pages of medical documents." (*Id.*)  But the ALJ

did not go on, as Plaintiff asserts, to "confess" that he had failed to "consider the entire

record" or apprise himself of the relevant information contained therein.  (*Id.*)  To the

contrary, once the ALJ located the March 7, 2007 FCE, he took a recess so that he

could review it.  (AR at 52.)  Moreover, in his decision, the ALJ expressly addressed

the FCE and, in fact, gave it "great weight."  (AR at 18, 307-312.)  As such, the record

directly contradicts, and the Court rejects, Plaintiff's assertion that "[t]he failure of the

ALJ to properly consider all medical impairments may be a reflection of the ALJ's

refusal to review the entire case record."  (Doc. # 13 at 15.)

An ALJ's consideration of a claimant's impairments begins at Step Two of the

sequential analysis, when the claimant must show that he has a medically severe

impairment or combination of impairments.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th

Cir. 2007).  An impairment or combination of impairments is "severe" within the meaning

of the regulations if it significantly limits the individual's ability to perform basic work

activities.[6]  By contrast, an impairment or combination of impairments is "not severe"

when medical and other evidence establish only a slight abnormality or a combination

of slight abnormalities that would have no more than a minimal effect on an individual's

---

[6]   Basic work activities are: "abilities and aptitudes necessary to do most jobs, including
walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing,
hearing, and speaking; understanding, carrying out, and remembering simple instruc-
tions; use of judgment, responding appropriately to supervision, coworkers, and usual
work situations; and dealing with changes in a routine work setting."  *Langley v.
Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (internal quotation marks and
citations omitted).

ability to work.[7]  At Step Two a claimant must also show that the asserted impairment meets the duration requirement of the regulations.  *See* 20 CFR § 404.1520(a)(4)(ii); 20 CFR § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

The Court agrees with Defendant that Plaintiff "failed to meet his burden to show that these alleged impairments [of chronic pain syndrome, fibromyalgia, and depression] were severe."  (Doc. # 17 at 13.)  To begin with, and as indicated in the background section above, Plaintiff's applications were premised on the "back injury" or "injured back" he suffered at work (*see, e.g.*, AR at 153), which the ALJ clearly considered, and not on other impairments.  Additionally, the medical evidence of chronic pain and fibromyalgia that Plaintiff cites are in reference to his back injury; again, the ALJ's consideration of such evidence is, as Defendant puts it, "fully accounted for" in his finding that Plaintiff's degenerative disc disease of the lumbar spine constituted a severe impairment.  (*See* Doc. # 17 at 14.)  Further, the ALJ addressed Plaintiff's depression but considered it to be non-severe as it "cause[d] no more than a minimal limitation on the ability [of Plaintiff] to perform work-related activity."  (AR at 14.)  The ALJ explicitly found that Plaintiff's depression "appears to be well controlled with medication."  (*Id.*)  Accordingly, the ALJ did consider Plaintiff's other asserted impairments.

However, regardless of the showing required at Step Two, on appeal the claimant must prove that failure to characterize a certain limitation as "severe" was

---

[7]   *See* 20 CFR §§ 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p.

prejudicial error.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here [at Step Two] became harmless when the ALJ reached the proper conclusion that [claimant] Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"); *Brake v. Astrue*, No. 10-cv-01309, 2011 WL 2533701, at *5 (D. Colo. June 24, 2011) (unpublished) (noting that claimant had not "met his burden of proving that he was prejudiced by any such error"); *see also Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (claimant must show "that he or she was prejudiced by the ALJ's failure").  In the instant case, even if the ALJ had failed to consider Plaintiff's chronic pain syndrome, fibromyalgia, and depression to be severe impairments, any such error could not have been harmful.  At Step Two, "a claimant is required to establish, and an ALJ is required to find, only one severe impairment."  *Dray v. Astrue*, 353 Fed. Appx. 147, 149 (10th Cir. 2009) (unpublished). "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at Step Two but must proceed to the next step.  Accordingly, the failure to find a particular impairment severe at Step Two is not reversible error as long as the ALJ finds – [as in the instant case] – that at least one other impairment is severe."  *Id.*; *accord Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) (unpublished).  Even Plaintiff seems to acknowledge as much by quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), for the proposition that "[a] claimant need only make a 'de minimis' showing of impairment to move onto further steps in the analysis."  (Doc. # 13 at 16.)

Because the ALJ determined that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment, he did not eliminate Plaintiff's disability claim

at Step Two, and any alleged error in analyzing the severity of Plaintiff's chronic pain

syndrome, fibromyalgia, and depression was necessarily harmless.[8]   Accordingly,

Plaintiff's assertion of error here provides no basis for reversal.[9]

---

[8]   Plaintiff does not explicitly assert that the ALJ erred in his RFC determination by failing to consider Plaintiff's chronic pain syndrome, fibromyalgia, and depression. To the extent such an assertion is implicit in Plaintiff's argument, however, the Court rejects it.

When a claimant's RFC is determined before Step Four, the ALJ "must consider the limitations and restrictions imposed by all of [the claimant's] impairments, even those that are not 'severe.'"  SSR 96-8p.  But a review of the ALJ's decision demonstrates that the ALJ did consider Plaintiff's other alleged impairments.

Initially, the Court notes that the ALJ, when determining the Plaintiff's RFC, stated that he had "considered **all** symptoms."  (AR 15 (emphasis added).)  As the Tenth Circuit has said, the "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter."  *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).  Plaintiff asserts no reason, nor is the Court aware of any, why the Court should not follow this "general practice" here.

Further, the ALJ's decision is replete with references indicating that the ALJ did, indeed, consider Plaintiff's other alleged impairments.  The "pain," "lower back discomfort," "reported upper and lower back pain," "low back pain in addition to [Plaintiff's] upper back pain," "pain issues," and "reported back pain" references highlight the AJL's consideration of the chronic pain syndrome and fibromyalgia pain that Plaintiff, and some of his doctors, assert he experienced.  (*See* AR at 15-19.)  Finally, the ALJ addressed Plaintiff's depression but stated that he agreed with Dr. James F. Dyde's February 15, 2008 psychiatric review of Plaintiff and corresponding assessment that Plaintiff "does not have a severe mental impairment."  (*Id.* at 19, 455-468.)

[9]   The Court also rejects Plaintiff's related assertion that "the ALJ did not develop a full record" at Step Three.  (Doc. # 20 at 2-3.)  Plaintiff asserts that the ALJ failed at Step Three to "set out specific findings and the reasons for accepting or rejecting evidence at this evaluation."  (*Id.*)  But at Step Three the ALJ stated that "[t]he claimant's back condition has been considered under Listing 1.04 which pertains to disorders of the spine, but the undersigned finds that the specific criteria for this, or any other, Listing section has not been met or equaled."  (AR at 15.)  Such an explanation constitutes substantial evidence and is readily distinguishable from *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), cited by Plaintiff, in which the ALJ "did not discuss the evidence" or "even identify the relevant Listing or Listings" at Step Three.  Moreover, as far as Step Three goes, Plaintiff has not argued or explained, nor is it apparent to the Court, how further development of the record regarding Plaintiff's alleged chronic pain syndrome, fibromyalgia, and/or depression would have met or medically equaled the criteria for an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  *See, e.g., Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (rejecting Step Three argument and noting that "appellant has not suggested how the combination of impairments might meet the criteria in the appendix").

**B.      THE ALJ'S RFC DETERMINATION**

Plaintiff next contends that the ALJ did not base his RFC determination on substantial evidence.  Consideration of this issue subsumes Plaintiff's third and fourth contentions – that the ALJ failed to give controlling weight to the opinions of Plaintiff's treating sources and improperly determined Plaintiff's credibility, respectively. Ultimately, though, the Court agrees with Plaintiff as to the ALJ's assessment of Plaintiff's treating sources and, thus, declines to address the ALJ's credibility determination of Plaintiff.

Before considering Step Four in the sequential evaluation process, the ALJ must determine the claimant's RFC.  20 CFR 404.1520(e).  A claimant's RFC represents his ability to do physical and metal work activities on a sustained basis notwithstanding impairment limitations.  *See, e.g., Overton v. Astrue*, No. 11-cv-00669, 2012 WL 3288945, at *3 (D. Colo. Aug. 10, 2012) (unpublished).  In making this finding, the ALJ "must consider the limitations and restrictions imposed by all of [the claimant's] impairments, even those that are not 'severe.'"  SSR 96-8p.

In the instant case, the ALJ determined, as previously mentioned, that Plaintiff had the RFC "to perform a range of light work."  (AR at 15.)  He specified Plaintiff's limitations as follows:

> [H]e can stand/walk for 4-6 hours during an 8-hour workday, and can sit for 6 hours during the same time frame, but should have the opportunity to alternate between the positions as needed.  From a postural perspective, he should avoid climbing ladders, ropes, and scaffolds; and should limit stooping, crouching, kneeling, and crawling to less than occasional.  He can occasionally climb stairs and ramps.  The claimant should avoid concentrated exposure to vibration and extreme cold.  He can perform jobs at all skill levels.

(*Id.*)  In making these findings, the ALJ noted that he had considered opinion evidence

and "all symptoms and the extent to which the[] symptoms can reasonably be accepted

as consistent with the objective medical evidence and other evidence . . . ."  (*Id.*)

As a threshold matter, the Court addresses Plaintiff's apparent misreading of the

ALJ's RFC determination.  Plaintiff asserts that the ALJ "determined [that] Plaintiff had

the RFC to perform a full range of light work" and that "no medical evidence by any

treating physician or testimony of the Plaintiff . . . support the ALJ's conclusion [that] the

Plaintiff is capable of performing a full range of light work as determined by the ALJ."

(Doc. # 13 at 6-7.)  Plaintiff then spends several pages of his Opening Brief arguing how

the evidence does not support the ALJ's "full range of light work" RFC determination.

(*See id.* at 7-11.)  The problem with Plaintiff's position is that the ALJ did not find

Plaintiff capable of performing a full range of light work.  To the contrary, the ALJ stated

that Plaintiff's "ability to perform all or substantially all of the requirements of this [light]

level of work has been impeded by additional limitations."  (AR at 20.)  In fact, as the

ALJ noted, the erosion of Plaintiff's ability to perform a full range of light work is what

required the VE's testimony because, "[i]f [Plaintiff] had the residual functional capacity

to perform the full range of light work, a finding of 'not disabled' would be directed by the

Medical-Vocational Rule 202.21."  (*Id.*)  Moreover, that the ALJ did not find Plaintiff able

to perform a full range of light work is evident in the ALJ's articulation of Plaintiff's RFC,

in which the ALJ explains that Plaintiff is able to perform only "a range of light work"

subject to the various limitations noted in the previous paragraph.

Accordingly, the Court rejects Plaintiff's RFC argument to the extent that it is erroneously premised on a finding the ALJ did not make.  As such, the Court will address Plaintiff's assertions in light of the RFC that the ALJ actually determined.

      1.   <u>Controlling Weight not Accorded to the Opinions of Plaintiff's Treating Physicians</u>

Plaintiff asserts that the ALJ erred in failing to give controlling weight to his treating physicians.  The Court agrees, because the ALJ did not analyze, let alone acknowledge, the opinions of all of Plaintiff's treating sources, as he was required to do.

"The ALJ, not a physician, is charged with determining a claimant's residual functional capacity based on the medical record."  *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  Nevertheless, according to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources."  *Langley*, 373 F.3d at 1119; *see also* 20 CFR. § 404.1527(d)(2).  In fact, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it."  *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). A treating physician's opinion is accorded this weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

"In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'"  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  To do so, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is 'no,' then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  [. . .] [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Id.* (internal quotation marks and citations omitted).

Even if a treating physician's opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR § 404.1527."  *Id.*  Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 CFR § 404.1527(d).

Under Tenth Circuit caselaw, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."  *Langley*, 373 F.3d at 1119 (internal quotation marks and citations omitted).[10]

In the instant case, Plaintiff was treated by numerous physicians.  Defendant's "statement of facts" discusses Plaintiff's treatment by, but not limited to: Susan Dern,

---

[10]   For non-treating physicians, the ALJ is again required to consider the six factors addressed above.  *See* 20 CFR § 404.1527(d).–

D.O.; Miguel Castrejon, M.D., Edwin Shockney, Ph.D.; Eric O. Ridings, M.D.; Sheldon

Ravin, M.D.; Stephen Ford, M.D.; Michael Brown, M.D.; J.S. Walia, M.D.; and James F.

Dyde, M.D.  (Doc. # 17 at 3-9.)  As Defendant relates, many of these doctors, including

Dr. Dern, Dr. Castrejon, and Dr. Ridings, opined on Plaintiff's ailments, and their

opinions are contained in the record.  (*See id.* at 4-5, 20-22 (discussing these, and

other, opinions and referencing their location in the record).)  However, the ALJ did

not discuss or even mention the vast majority of these treating source opinions in his

decision.  In fact, only the opinions of Dr. Ravin and Dr. Brown are addressed (AR at

15-19), although there is a citation, without reference to the author, of an assessment

that the record discloses was performed by Dr. Dyde (*id.* at 19, 455-68).

The absence of any discussion of these treating source opinions precludes the

Court from conducting a meaningful review.  No explanation is given for whether these

opinions merit controlling weight or are otherwise entitled to deference under the

§ 404.1527 factors.  This constitutes reversible legal error.  *See Victory v. Barnhart*, 121

Fed. Appx. 819, 825 (10th Cir. 2005) (unpublished); *Hamlin v. Barnhart*, 365 F.3d 1208,

1215 (10th Cir. 2004) (noting that the Social Security regulations require an ALJ to

"evaluate every medical opinion" it receives).  Even on issues reserved to the ALJ, such

as the RFC assessment, opinions from medical sources must always be carefully

considered and never ignored.  SSR 96-5p.

As indicated, Defendant acknowledges the opinions of Plaintiff's treating sources,

such as Dr. Dern, Dr. Castrejon, Dr. Walia, and Dr. Ravin but argues that the ALJ

"reasonably considered all of those doctors' opinions (along with Plaintiff's other treating

physicians' opinions) . . . ."  (Doc. # 17 at 18.)  But other than for the opinions of

Dr. Ravin and Dr. Brown, nothing in the ALJ's decision bears this out.  As a result,

Defendant falls back on asserting that Plaintiff merely "**alludes** to other opinions in his

arguments . . . ."  (*Id.* at 20.)  However, Plaintiff's direct and explicit assertions include

that: "the ALJ only commented on Dr. Ravin" (Doc. # 13 at 12); "[t]he ALJ makes no

comment regarding Dr. Dern's restrictions nor her credibility" (*id.*); and "the ALJ fails

to either comment on Dr. Castrejon or make any determination as to the weight to be

given to Dr. Castrejon's opinion" (*id.* at 13).

Defendant does an admirable job of marshaling the record evidence to support

his position that the opinions of Plaintiff's treating sources "do not support his claims

of disability . . . ."  (Doc. # 17 at 20.)  But such "post-hoc rationalizations," which are

necessarily absent from the ALJ's decision, are totally improper.  *See, e.g.*, *Haga v.

Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).  Considering them would effectively

require the Court to reexamine the issues *de novo*, re-weigh the evidence, and

substitute its judgment for that of the ALJ.  This, of course, the Court cannot do.  *See

Sisco*, 10 F.3d 739 at 741; *Salazar*, 468 F.3d at 621.  Whatever merit Defendant's

position holds – which Plaintiff here strongly asserts is none – can only be properly

addressed by the ALJ on remand.

2.    Plaintiff's Remaining Contentions

Because the Court is remanding for additional proceedings relating to the ALJ's

determination of Plaintiff's RFC, the Court declines to address Plaintiff's remaining

assertions, as they may be affected by the ALJ's treatment of this case on remand.

*See, e.g.*, *Watkins*, 350 F.3d at 1299 (reversing and remanding where the "ALJ did not follow correct legal standards in considering the opinion of appellant's treating physician," the court stated that it would "not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's decision be VACATED and REMANDED to the Commissioner for proceedings consistent with this Order.

DATED:  September   28  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge